UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| TRI-C CONSTRUCTION CO., INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 07-200-DCR |
| ) | |
| V. ) | |
| ) | |
| BLUEGRASS STEEL ERECTORS, LLC, ) | **MEMORANDUM OPINION** |
| and MICHAEL NAPIER, ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is currently pending for consideration of the Defendants' motions [Record Nos. 12 and 14] to set aside the default judgment entered September 18, 2007 [Record No. 11]. Having considered these motions and the Plaintiff's response, the Court believes that Rule 55(c) is applicable to this issue and that good cause has been established for the relief sought. Accordingly, the Defendants' motions will be granted.

### I.   Procedural History

Plaintiff Tri-C Construction Co., Inc. ("Tri-C") filed this action on June 13, 2007, seeking damages from Defendants Bluegrass Steel Erectors, LLC ("Bluegrass Steel"), and Michael Napier ("Napier") based on claims of: breach of contract (Count 1); negligent misrepresentation (Count 2); breach of a covenant of good faith and fair dealing (Count 3); interference with contract (Count 4); and non-compliance with KRS § 275.300 (Count 5). In Count 6, Tri-C asserts that Defendant Napier is the alter ego of Bluegrass Steel and seeks damages against him under a piercing the corporate veil theory.

The facts common to all counts are set forth in paragraphs 6 through 24 of the Complaint. In relevant part, Tri-C alleges that it entered into two contracts with Bluegrass Steel in April 2007 in connection with certain Wal-Mart construction projects located in Pennsylvania and Indiana. It claims that proposed written contracts were forwarded to Bluegrass Steel in advance of the projects and that these form documents had been used by the parties in conjunction with earlier projects. However, Bluegrass Steel failed to execute and return the documents for either the Pennsylvania or Indiana projects. Notwithstanding this fact, it appears that the parties proceeded as if agreements had been reached. According to Tri-C, the Defendants were "accustomed . . . to working under the standard Tri-C subcontract and . . . [were] familiar with all of the subcontract's terms." [*See* Complaint, ¶ 10.]

Bluegrass Steel allegedly commenced work on both projects in April 2007. However, Tri-C contends that, on or about May 14, 2007, Wal-Mart learned that Bluegrass Steel was using illegal aliens to perform work as subcontractors on the projects. As a result, it terminated the Indiana, Pennsylvania, and a third construction contract with Tri-C. Thereafter, Tri-C terminated its subcontracts with the Defendants and filed the present action.

Suit was commenced on June 13, 2007. Tri-C states that it served both Defendants with Summons and a copy of the Complaint on June 22, 2007. [Record No. 6] Additionally, it corresponded with Christopher Skatell, the Defendants' out-of-state attorney, concerning the deadline for responding to its Complaint.[1] However, after the Defendants failed to file a response

---

[1] Around the time the Defendants' response was due, counsel for the Plaintiff corresponded with attorney Christopher Skatell of Greensburg, Pennsylvania, based on a well-founded belief that Mr. Skatell would be representing the Defendants. Later, counsel called Mr. Skatell on or about July 19, 2007, concerning the Defendants' response. Skatell followed-up with a letter the following day requesting a copy of the Complaint and an extension of thirty days to file a responsive pleading. The Plaintiff's attorney then sent a copy of the Complaint to Skatell and informally agreed to extend the time for responding until August

within the time provided by the Federal Rules of Civil Procedure, Tri-C moved the Court to enter a default judgment against both Defendants. This initial motion was filed August 27, 2007. [Record No. 6] However, because the Plaintiff did not first obtain entry of default, the motion was denied. [Record No. 7]

On August 30, 2007, Tri-C sought and subsequently obtained entry of default against both Defendants. [Record Nos. 8 and 9] Thereafter, the Court entered a default judgment on September 18, 2007. [Record No. 11] Since damages could not be determined from the pleadings, a hearing was scheduled for October 2, 2007, to allow Tri-C to present evidence concerning its damage claims. As a result, the September 18, 2007, default judgment remained an interlocutory, non-appealable order.

On October 1, 2007, Defendants Bluegrass Steel and Napier moved the Court to set aside the default judgment pursuant to Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure. [Record Nos. 12 and 14] In support of these motions, the Defendants asserted that their failure to respond to the Complaint was the result of excusable neglect in that they believed local counsel had been retained. They further assert that the Plaintiff would not suffer any prejudice if their motions are granted. Counsel for all parties appeared at the hearing scheduled on October 2, 2007. However, due to the recently-filed motions to set aside the default judgment, the Court continued the damages hearing to allow the issues to be fully briefed. The matter is now ripe for resolution.

---

10, 2007. On August 10, 2007, in response to additional communications, Mr. Skatell advised counsel for the Plaintiff that he was having communication problems with the Defendants. And by letter dated August 14, 2007, the Plaintiff's attorney was advised that Skatell no longer represented the Defendants. According to the Plaintiff, both the August 10th and August 14th letters confirmed that Skatell had advised the Defendants of the consequences of failing to file a response to the Complaint.

**II.     Legal Analysis**

Rule 55(c) of the Federal Rules of Civil Procedure provides that entry of default may be set aside "for good cause shown." Conversely, Rule 60 allows the Court to provide relief from final judgments and orders. That rule provides that, "the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . ." Rule 60(b), Fed. R. Civ. P. The parties appear to agree that a more stringent standard is imposed under Rule 60(b) that Rule 55(c).

In opposing the Defendants' motions, Tri-C argues that: (1) the more stringent standard applicable to Rule 60(b) should be applied to the Defendants' motions; (2) the Defendants' conduct does not qualify as "excusable neglect"; (3) the Defendants have not established a meritorious defense entitling them to the relief sought; and (4) it has been significantly prejudiced by the Defendants' actions. However, after considering these issues, the Court finds the Plaintiff's objection to the Defendants' motion to be misplaced.

A.     The Applicable Standard of Review.

Tri-C argues as an initial matter that the Defendants' motion to set aside the default is filed pursuant to Rule 60(b) – not Rule 55(c) – of the Federal Rules of Civil Procedure. Thus, they contend that a more stringent standard applies. Citing *Manufacturers' Indus. Relations Ass'n. v. East Akron Casting Co.*, 58 F.3d 204, 208 (6th Cir. 1995), Tri-C asserts that, "[w]hile a default judgment may be vacated only by satisfying the stricter standard applied to final, appealable orders under Fed. R.Civ.P. 60(b), an entry of default may be set aside for 'good cause shown.'" *Id.* And under Rule 60(b), the court may only relieve a party in default upon a showing of mistake, inadvertence surprise or excusable neglect. According to Tri-C, unless one of these factors is

shown, the court need not determine whether the Defendants can demonstrate whether a meritorious defense or prejudice are present. [Record No. 18, p. 4] *See Orms v. Bailey*, 2006 WL 3845028, *2 (E.D.Ky. 2006).[2] While the Defendants do not specifically address this argument in their reply,[3] the issue is significant under the facts presented.

The Plaintiff is correct that a more liberal standard is applied under Rule 55(c); however, it is incorrect in asserting that Rule 60(b) is applicable here. Rule 60 (b) permits relief from *final* judgments, orders or proceedings. *See* Rule 60 (b), Fed. R. Civ. Pro. In this context, "finality" is identical to the "finality" that is required for appeal purposes. *United States v. Baus*, 834 F.2d 1114, 1119 (1st Cir. 1987), *citing Solaroll Shade & Shutter Corp. v. Bio-Energy Systems, Inc.*, 803 F.2d 1130, 1131 (11th Cir. 1986).

In the present case, the default judgment entered September 18, 2007, does not constitute a "final" judgment because damages were not determined. Only after such a determination would the Defendants be able to file an appeal. Until that time, the order remained interlocutory. *See Student Loan Marketing Ass'n v. Lipman*, 45 F.3d 173, 175-77 (7th Cir. 1995) (where an ambiguity existed over whether the court intended to award pre-judgment – as opposed to only post-judgment – interest, the order was deemed to be not "final" for purposes of Rule 60(b)).

Although more liberally applied under Rule 55(c), the same factors are examined in determining whether to set aside either an entry of default or a default judgment. Thus, in

---

[2] Unlike the facts presented in *Orms*, the Court in the present case did not make a damage determination prior to the Defendants' motion to set aside the default. Therefore, Tri-C's reliance on this case is in error.

[3] While the Defendants argue that they have cited both rules (and presumably contend that they have *raised* the issue of whether Rule 55(c) is applicable), they do not attempt to explain why they believe the rule applies to the facts presented. [Record No. 22, pp. 1-2]

considering whether relief from a default should be granted, the Court should consider: (1) whether the plaintiff will be prejudiced from re-opening the case; (2) whether the defendant has a meritorious defense; and (3) whether the defendant's culpable conduct led to the default. *Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990); *United Coin Meter Co. v. Seaboard Coastline R. R.*, 705 F.2d 839, 845 (6th Cir. 1983); *Southern Electrical Health Fund v. Bedrock Svcs,* 2005 U.S. App. LEXIS 17819, **8 (6th Cir. 2005). When these factors are applied under the more liberal standard of Rule 55(c), the Court concludes that the Defendants' motion should be granted.

> B. <u>The Defendants' Conduct Constitutes Excusable Neglect Rather Than Culpable Conduct.</u>

The Defendants claim that they failed to respond to Tri-C's Complaint because Mr. Napier believed that his wife had retained local counsel while Mrs. Napier believed that Mr. Napier had retained counsel. They assert that it was September 26, 2007, before they realized that the Defendants were not represented in the action. By that date, entry of default and a default judgment had already been entered. [Record No. 12, p. 2]

Relying on the date of service of process as the relevant date rather than the extended August 10, 2007, deadline for a response, Tri-C argues that the Defendants' conduct constitutes culpable conduct rather than excusable neglect.[4] They contend that, because the Defendants and their original attorney were aware of the deadline for filing a responsive pleading, they cannot argue in good faith

---

[4] Mere carelessness is insufficient to establish "culpable conduct". Instead, there must be an intent to thwart the judicial proceedings or a reckless disregard for the effect of its conduct on the proceedings. *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194-95 (6th Cir. 1986) ("We do not believe it appropriate to attempt a precise definition of 'culpable conduct.' Where the party in default satisfies the first two requirements for relief and moves promptly to set aside the default before a judgment is entered, the district court should grant the motion if the party offers a credible explanation for the delay that does not exhibit disregard for the judicial proceedings.").

that their conduct was unintentional. Further, they argue that the alleged excuse that Napier and his wife each thought that the other had engaged local counsel is simply not credible.

Although it appears that the Defendants were either careless or negligent and should have been aware that a response had not been filed to Tri-C's Complaint, the Court cannot conclude that their actions were taken in bad faith or in an effort to willfully delay this proceeding. Had such been shown, refusal to set aside the default would be justified by existing case authorities. *FDIC v. Francisco Inv. Corp.*, 873 F.2d 474 (1st Cir. 1989); *Shephard Claims Svcs, Inc. v. William Lato, Inc.*, 796 F.2d 190, 194-95 (6th Cir. 1986); However, absent such a showing, the Court believes the better practice would be to allow the parties resolve their disputes on the merits. *Berthelsen*, *supra*, at 620.

C. The Defendants Have Asserted A Meritorious Defense.

In examining whether the Defendants have submitted a meritorious defense, the Court is cognizant that all ambiguous or disputed facts must be resolved in favor of the Defendants. *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391, 398 (6th Cir.), *cert. denied*, 484 U.S. 927 (1987). Further, the key to this inquiry is whether there is some possibility that the outcome of the suit, after a full trial, will be contrary to the result achieved by the default. *Id.* at 399.

With regard to this issue, the Defendants have submitted a number of documents which they contend supports the fact that they have a meritorious defense. Further, they assert that these documents also demonstrate that Tri-C has not suffered prejudicial delay as a result of their actions. These documents include applications for payment regarding the Pennsylvania and Indiana projects totaling $216,000.00 and dated April 25, 2007; a change order totaling $24,000.00; Tri-C's letter of May 14, 2007, terminating the contracts; a demand letter dated June 1, 2007, from Mr. Skatell;

and change orders dated September 17 and September 20, 2007, issued to Bluegrass Steel (purportedly reducing the contract amount by $11,411.98). According to the Defendants, these documents indicate "a tremendous incentive . . . to pursue this matter. . . " [Record No. 22] While the Defendants may have an incentive to contest the Plaintiff's claims and assert claims on their own, this does not necessarily constitute a "meritorious defense."

However, after reviewing the documents submitted by the Defendants (and considering the fact that the Plaintiffs have not presented any documents or other information supporting their position), it does appear that a good faith dispute exists concerning whether the Plaintiff or the Defendants breached their agreement. Because the Plaintiff does not contend that a written contract exists for either the Indiana or Pennsylvania projects, it is not clear that Tri-C's attempt to unilaterally terminate the parties' contracts is effective. Further, the documents submitted by the Defendants do indicate that substantial work was preformed before action was taken by Tri-C to end the parties' business relationship. In short, while the Defendants have not attempted to explain the legal significance of the documents, the Court believes that they would support a meritorious defense and compulsory counterclaim.[5]

### D. Prejudice Resulting From The Defendants' Conduct

---

[5] If the Defendants' are unsuccessful in their attempt to set aside the default, they will be precluded from asserting their compulsory counterclaim asserting that Tri-C breached the contracts. *Carteret Sav. & Loan Assn v. Jackson*, 812 F.2d 36, 38-39 (1st Cir. 1987); *Cleckner v. Republic Van & Storage, Co.*, 556 F.2d 766, 768-70 (5th Cir. 1977).

The Plaintiff's claim of prejudice[6] relates to the expenses incurred in connection with the aborted damages hearing originally scheduled for October 2, 2007. According to Tri-C,

> [a] significant amount of time was spent gathering, reviewing and organizing Tri-C's damage documentation. Additionally, on October 1, 2007, Mr. Perry Hostetler, Director of Wal-Mart Construction for Tri-C traveled by plane from Tri-C's headquarters in Akron, Ohio to Cincinnati, Ohio so he could testify at the damages hearing on October 2, 2007.

[Record No. 18, p. 3]

The Plaintiff has not indicated the specific amount of time spent preparing for the damages hearing. Likewise, the Plaintiff has not provided detailed information concerning the costs incurred by Mr. Hostetler in traveling to London, Kentucky, for the hearing.[7] However, it asserts that the time spent in preparation for this hearing will be lost because, if the Defendants' motions are granted and the matter proceeds to trial, "the time spent in reviewing damage documentation and preparing the presentation of damages for trial . . . will almost assuredly need to be revisited and repeated." [Record No. 18, p. 7]

In their reply, the Defendants argue that costs and expenses incurred in preparing for the damages hearing does not constitute prejudice for purposes of determining whether a default should be set aside. Instead, they assert that the type of prejudice required relates to whether the Plaintiff will barred from proceeding with other available remedies such as was presented in *Orms v. Bailey, supra.* As noted in footnote 6, the Defendants' argument concerning this issue is correct. Therefore,

---

[6] Delay alone is not sufficient to establish prejudice in this context. Instead, the plaintiff must show that the delay will result in a loss of evidence, increased difficulty in discovery, or greater opportunity for fraud and collusion. *See Berthelsen, supra,* at 621, citing *INVST Financial Group, supra. See also*, *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996).

[7] Tri-C indicates in its response that if the Defendants' motions are sustained it will submit affidavits outlining all expenses and costs incurred by Tri-C in preparing for the damages hearing and having Mr. Hostetler present for the hearing on October 2, 2007. [Record No. 18, p. 8, fn. 3]

the Court finds that the Plaintiff has not demonstrated that it has suffered the type of prejudice necessary to prevent setting aside the default.

### III. Conclusion

For the reasons discussed above, it is hereby

**ORDERED** that the Defendants' motions to set aside the default judgment and entry of default [Record Nos. 12 and 14] are **GRANTED**. The default judgment entered September 18, 2007 [Record No. 11] is **VACATED** and **SET ASIDE**. Likewise, the Clerk's entry of default dated August 31, 2007 [Record No. 9] is **VACATED** and **SET ASIDE**.

This 1st day of November, 2007.

Signed By:
*Danny C. Reeves* DCR
United States District Judge